## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**NICOLE GUTIERREZ, as Court appointed**
**Guardian and Conservator for Juan D. Baca, a**
**Disabled Person,**

     **Plaintiff,**

**vs.**                                    **No: 1:21-cv-00984**

**JOHNSON & JOHNSON INTERNATIONAL,**
**INC.,**

     **Defendant.**

## PLAINTIFF'S FIRST AMENDED COMPLAINT FOR CLAIMS UNDER ERISA, DECLARATORY JUDGMENT, AND INJUNCTIVE RELIEF

     **COMES NOW**, Plaintiff, Nicole Gutierrez, as court appointed Guardian and Conservator of Juan D. Baca, a disabled person, by and through counsel of record, DeNiro Law, LLC (Vanessa L. DeNiro, Esq.), and submits this First Amended Complaint For Claims Under ERISA, Declaratory Judgment, and Injunctive Relief, and states as follows:

### INTRODUCTION

     1.    This action arises out of Defendant's refusal to pay a mandatory survivor benefit to the surviving spouse of a pension plan participant. Juan D. Baca (hereafter "JD Baca" or "JD") was legally married to Lisa R. Baca ("Ms. Baca"), who passed away on May 31, 1994. At the time of her death, Ms. Baca was an employee of Defendant and was a participant in the Pension Plan (the "Plan") sponsored by Defendant. As Ms. Baca's surviving spouse and her designated beneficiary, JD Baca is entitled to survivor benefits.

2.     JD Baca is a mentally disabled person, for whom the Court has appointed a Guardian and Conservator to protect his best interests and ensure his health and financial needs are met. Given his particular situation, receiving the survivor benefits from the Plan is especially vital to JD's continued care and wellbeing.

3.     Despite being notified of JD's disability on numerous occasions, Defendant has refused to offer reasonable accommodations and, *inter alia,* denied his Guardian/Conservator the authority to communicate and act on JD's behalf, effectively denied survivor benefits, made misleading statements and misrepresentations, and violated multiple sections of the Employee Retirement Income Security Act.

## THE PARTIES

4.     Plaintiff, Nicole Gutierrez, as court appointed Guardian and Conservator of Juan D. Baca, a disabled person, (hereafter "Nicole Gutierrez" or "the Guardian") is a resident of Bernalillo County, New Mexico.

5.     The surviving spouse of the deceased employee and designated beneficiary under the Plan, Juan D. Baca, a disabled person, (hereafter "JD Baca") is a resident of Bernalillo County, New Mexico.

6.     Defendant, Johnson & Johnson International, Inc. is a Foreign Profit Corporation doing business in the State of New Mexico (referred to as "J&J" hereafter).

7.     At all relevant times, Defendant has been a fiduciary of the Plan and the Plan sponsor within the meaning of ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B).

8.     At all relevant times, Defendant has been a fiduciary of the Plan. It is a named administrator of the Plan within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A).

**JURISDICTION AND VENUE**

9.     This Court has jurisdiction over the parties and subject matter, and the venue is proper.

10.     Plaintiff brings this action for monetary and equitable relief pursuant to § 502(a)(1)(B) and § 502(a)(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), as well as 29 U.S.C. §§ 1132(a)(1)(B) and 1132(a)(3), and declaratory judgment, and injunctive relief. This Court has subject matter jurisdiction over Plaintiff's claims pursuant to ERISA §§ 502(e) and (f), 29 U.S.C. §§ 1132(e) and (f), and 28 U.S.C. § 1331.

**FACTUAL BACKGROUND**

11.     JD Baca has suffered from mental deficiencies from an early age, beginning with learning disabilities and illiteracy throughout school. When he turned 19 years old, a teacher referred him for a vocational evaluation. The evaluation reported severe dyslexia, including limitations related to verbal-cognitive areas and the inability to follow written instructions.

12.     Through the aid of specialized education and job training programs, JD Baca was able to live a relatively independent life, even maintaining employment for various periods of time.

13.     JD Baca and Lisa R. Baca were married on February 5, 1988.

14.     Lisa R. Baca, deceased, began employment with J&J on or about August of 1988.

15.     A benefit of Lisa Baca's employment with J&J was a Retirement Plan, in which she became fully vested.

16.     Lisa R. Baca designated JD Baca as the survivor beneficiary of the Retirement Plan held with her employer, J&J.

17.     On May 31, 1994, Lisa Baca passed away, and was survived by JD Baca and their minor child.

18.     JD Baca's health and cognitive abilities continually deteriorated over the years but the tragedy of his wife's death triggered a significant decline; JD Baca began to rely heavily on his family for assistance with day-to-day functions, paying bills, and maintaining his home.

19.     On or about September 29, 1995, J&J mailed written correspondence to JD Baca advising that he was entitled to receive benefits under Lisa R. Baca's Retirement Plan. See **Exhibit A**, *September 29, 1995 Letter from Johnson and Johnson.* This letter conveyed that the survivor benefits would be eligible for disbursement beginning December 1, 2015.

20.     On or about January 30, 2013, the Court entered an Order appointing Ashley Baca (JD's daughter) and Nicole Gutierrez (JD's sister) as Co-Guardians of Juan D. Baca in Case No. D-202-PQ-2012-00067. As described in this Order, the Court found that there were, "no available and adequate alternatives suitable for the care, oversight and treatment and welfare, safety, and rehabilitation of the incapacitate person, or for the affective [sic] management of property and financial affairs." Additionally, the Court ordered that, "Decisions of the co-guardians shall take precedence over decisions of any health care or financial agent, attorney in fact, or other surrogate or agent appointed … ." See **Exhibit B,** *Order Appointing Co-Guardians of Juan D. Baca.*

21.     In 2014, JD Baca faced the risk of losing his residence by way of foreclosure and litigation ensued, and therefore, JD Baca's family, collectively began helping him more and more with financial matters. It was only then that JD Baca's sister and Guardian, Nicole Gutierrez,

discovered the 1995 Letter sent to him by J&J regarding his survivor benefits under the Retirement Plan.

22.     By the time the survivor benefits first became eligible for distribution on December 1, 2015, JD Baca and his family were consumed with the foreclosure litigation.

23.     However, the Guardian still managed to contact J&J for the first time on or about December 21, 2015, to obtain more information about the benefits and determine what was needed for distribution to start. In this correspondence, Nicole advised J&J of JD's disability, as well as her appointment as co-guardian of JD Baca, and requested special accommodations, specifically indicating that he requires her assistance to properly complete the process. See **Exhibit C,** *Affidavit of Nicole Guiterrez.*

24.     After additional phone calls, J&J directed the Guardian to fax over supporting documentation to its Benefits Service Center, which she did on or about January 5, 2016.

25.     On or about January 28, 2016, J&J sent another written correspondence regarding the survivor benefits; the letter did not acknowledge the Guardian's request for a special accommodation, but rather, required JD Baca to make a Federal Tax Withholding Election and a Direct Deposit Election with regard to the survivor benefits. See **Exhibit D**, *January 28, 2016 Letter from Johnson and Johnson.*

26.     JD Baca's cognitive deficiencies drastically impair his ability to comprehend written instructions. Even if he had been able to understand the contents of the letters sent by J&J in 1995 and 2016, JD was certainly unable to complete the proper forms on his own, much less grasp the concept and impact of federal tax withholdings.

27.     Accordingly, Nicole Gutierrez made multiple attempts to explain the situation to J&J and to clarify any confusion preventing the disbursement of benefits JD Baca was entitled to receive. She reiterated her appointment as JD's co-guardian and that he was unable to complete the process on his own. Unfortunately, the Guardian's efforts were met with notable resistance and a general disregard from J&J, who was unwilling to accommodate JD Baca's disability.

28.     J&J then directed the Guardian to submit a Power of Attorney form, which she found curious since she was JD's *co-guardian*, nevertheless she did submit the form on April 7, 2016 with a copy of the 2013 Order appointing her as co-guardian.

29.     On or about April 8, 2016, J&J officially denied Nicole Gutierrez access to JD's account. See **Exhibit E**, *April 8, 2016 Denial Notice from Johnson and Johnson.*

30.     This Denial Notice shrewdly acknowledged Nicole's appointment as JD Baca's *co-guardian*, but erroneously required that she be appointed *Conservator* before she could be authorized to assist in the process. J&J's basis for denying Nicole authority to communicate on behalf of JD was completely wrong. as the Order Appointing Co-Guardians provided to J&J was more than sufficient to establish Nicole's authority to communicate, assist, and make determinations related to Juan D. Baca's benefits associated with his deceased spouse's Retirement Plan.

31.     Although the Denial Notice provided an explanation for the denial decision, it provided no instructions or mechanism for appealing or otherwise disputing the decision. More specifically, there was no opportunity to clarify and explain that the Order Appointing Co-Guardians did, in fact, include management of financial affairs.

32.     Pursuant to the Letters of Guardianship, Nicole was granted plenary power and authority under New Mexico Law, to independently act on behalf of the protected person, Juan D. Baca, for all purposes related to Juan D. Baca's custody, care, health, safety, **and finances**, as outlined by NMSA 1987, § 45-5-312(B)(4). See **Exhibit F,** *November 14, 2016 Letters of Guardianship.*

33.     Notwithstanding the fact that the plenary powers granted to Nicole Gutierrez under the Guardianship allowed her to communicate and act on JD Baca's behalf, J&J forced her to take the necessary step of reopening Case No. D-202-PQ-2012-00067 to become Conservator.

34.     On or about October 13, 2016, Ashley Baca voluntarily resigned as Co-Guardian, thereby leaving Nicole Gutierrez as JD's sole Guardian.

35.     On or about January 31, 2017, the Court entered an Order appointing Nicole Gutierrez as JD's Conservator.

36.     Letters of Plenary Conservatorship were issued by the Court on February 9, 2017. Nicole Gutierrez faxed a copy of this document to Defendant later that same month and was still not granted access to JD's benefits account.

37.     With frustrations mounting, and unease with the J&J's original denial, the Guardian was forced to retain legal representation to prepare a Demand Letter to J&J. The Demand Letter was transmitted on August 2, 2017 to three (3) known addresses for J&J, including its main office and its Benefits Services Center. See **Exhibit G**, *August 2, 2017 Demand Letter to Johnson & Johnson.*

38.     The 2017 Demand Letter delineated the prior efforts made by the guardian/conservator and the added hurdles imposed by J&J. The letter not only requested JD

Baca's account information and documentation, but it also clearly expressed that JD Baca is a disabled person and that special accommodations were being requested; specifically, requesting for J&J to allow JD's guardian to communicate on his behalf. Plaintiff's counsel advised J&J that it would facilitate any process necessary to ensure the claim for benefits would be processed. The letter also stated if there is any other outstanding documentation that is required to begin the payment of benefits, No response to the 2017 Demand Letter was ever received from J&J.

39.     Despite the fact that the Guardian followed J&J's instructions to obtain appointment of conservator, J&J still did not accept her as an authorized representative of JD Baca.

40.     In addition to the vital care she provides on a daily basis and the time-consuming guardian and conservator reports she is required to file annually, Nicole became inundated with incredibly pressing matters; for the next several years, the Guardian worked tirelessly to conclude the foreclosure litigation, relocated JD Baca to a residence that better suits his needs, and created a Special Needs Trust on his behalf.

41.     After accomplishing those goals, the Guardian was able to concentrate her attention and energy on pursuing JD Baca's survivor benefits owed by J&J.

42.     On or about June 8, 2021, The Undersigned's office contacted J&J's Benefits Service Center in an effort to avoid litigation and determine the best course of action for having the matter addressed expeditiously. J&J was informed, yet again, of JD's disability and was asked to make a reasonable accommodation for JD regarding the claims process.

43.     J&J advised this office to fax over all pertinent information and then to call back to request a Ticket to be opened with the Escalation Team; J&J indicated that an Escalated Ticket would ensure the faxed documents would be flagged for a supervisor's immediate attention.

44.     Pursuant to J&J's instruction, a new Demand Letter was prepared and faxed to J&J on or about June 22, 2021, which included Lisa R. Baca's death certificate, Guardianship/Conservatorship Orders, and copies of all prior correspondence. See **Exhibit H**, *June 22, 2021 Demand Letter to J&J with Fax Confirmation.*

45.     The 2021 Demand Letter, again, plainly notified J&J that JD Baca is disabled and and also requested information including but not limited to, a payment history, all past due amounts accrued and ongoing monthly statements.

46.      More specifically, the letter advised that JD requires the assistance of Nicole Gutierrez, as his court appointed Guardian and Conservator, to understand and complete the required paperwork.

47.     The next day, June 23, 2021, the Guardian's Counsel contacted J&J to confirm receipt of the fax and Ticket (No. 1060653) was opened with the Escalation Team. J&J's representative, Brielle, advised that everything appeared to be in order and that J&J would reach out to discuss next steps once the faxed documentation had been fully processed.

48.     After approximately two (2) weeks of no contact from J&J, a follow-up call was made by the Guardian's Counsel on or about July 8, 2021, referencing the Escalated Ticket number.

49.     The law firm representing the Guardian was informed by a member of the J&J's Escalation Team named Shannon that Ticket No. 1060653 had been marked as *closed* that very

same day of July 8, 2021. Shannon advised that this meant the request for a special accommodation had been reviewed and a decision was made; more specifically, J&J indicated that Nicole Gutierrez would be receiving a mailed letter, either approving or denying the request for accommodation, permitting Nicole Gutierez's ability to act on JD Baca's behalf. If approved, the letter would contain a temporary password for Nicole to access the account. See **Exhibit I**, *Affidavit of James Peck.*

50.     When asked about the estimated timeframe for receiving the mailed letter, J&J's representative advised that its policy is to have written confirmation mailed within fifteen (15) days after a decision is made. After approximately sixty (60) days passed without receiving a letter or any communication from J&J, the Guardian decided to commence a legal action against J&J.

51.     On September 3, 2021, the Plaintiff sued J&J in State Court. The matter was later removed to federal district court upon Defendant's request.

52.     On November 12, 2021, Defendant filed a Motion to Dismiss the Complaint. Attached to its Motion, was a July 2020 Summary Plan Description for the Consolidated Retirement Plan of J&J, also referred to as Summary Plan Description "SPD". **See Exhibit J**, *J&J's Summary Plan Description.*

53.     This was the first time Plaintiff received a copy of the SPD, and to her knowledge, JD Baca never received a copy of the SPD routinely as a deceased employee's surviving spouse.

54.     According to the Summary Plan Description, attached as Exhibit J, it states:

... there are steps you can take to enforce the above rights. For instance, if you request a copy of plan documents or the latest annual report from the plan and do not receive them within 30 days, you may file suit in a Federal court. In such a

case, the court may require the plan administrator to provide the materials and pay you up to $110 a day until you receive the materials, unless the materials were not sent because of reasons beyond the control of the administrator ...  . If you have a claim for benefits which is denied or ignored, in whole or in part, you may file suit in a state or Federal court.

55.     On or about December 10, 2021, Guardian's Counsel submitted documentation to the Department of Labor's subdivision Employee Benefits Security Administration (EBSA) for review and analysis.

56.     After having finally received the purported SPD document, along with the formal claim submission process, Plaintiff sought to make a good faith effort to cover all conceivable bases; not to concede that a claim was being submitted for the very first time, but for Defendant's appeasement. Accordingly, on or about December 17, 2021, Counsel for the Guardian attempted to submit a written Claim for Benefits and made a formal written request for all documentation related to and concerning the subject Plan, as well as any records or information that might affect this claim. Counsel sent the request to Defendant at the address specified in the SPD and in Defendant's Motion to Dismiss. See **Exhibit K,** *Claim for Benefits dated 12/17/21*.

57.     However, the contact information provided by J & J was incorrect. Pursuant to the instructions set forth in the Summary Plan Description, and as cited in Defendant's Motion to Dismiss, Defendant directed Plaintiff to file and submit a written claim to the following address: Johnson & Johnson Benefit Service Center P.O. Box **66103,** Dallas, TX 75266-1103. This was an incorrect and non-existent address.

58.     After conducting additional research, the Undersigned located an address that was acceptable to the US Postal Office, and the written claim was properly mailed to the J&J Benefits

Service Center. **Exhibit L,** *Certified Mail Receipt.*   To date, Defendant has not produced the documents Plaintiff requested in the December 2021 letter.

59.     On or about February 17, 2022, EBSA Agent, Lorraine Miller, conducted a phone conference with J&J's Benefit Service Center. See **Exhibit M**, *2nd Affidavit of James Peck*

60.     During the course of this conversation, Defendant's representative, Ricky, advised that Nicole Gutierrez had apparently been approved as an authorized contact for JD's benefits account and an approval notice had been mailed on November 28, 2017.

61.     This information directly contradicted statements made by Defendant's other representatives in June of 2021, when they instructed the Undersigned's office to resubmit documentation supporting Nicole's status as Guardian/Conservator could be reviewed for approval.

62.     Notwithstanding, after explaining the alleged notice was never received and asking the address it was sent to, Ricky could only acknowledge and confirm it was *not* mailed to theNicole's  address listed as in the Letters of Guardianship, which he admitted to having a copy of on file. Request was made for the approval notice to be resent to the correct address.

63.     Ms. Miller of EBSA then inquired if J&J would be paying the full retroactive amount from December 1, 2015, when JD's survivor benefits first became eligible. Defendant's representative was notably reluctant to provide a definitive answer, to such an extent that it could be reasonably inferred that J&J will only pay benefits moving forward.

64.     Good faith efforts were made by Plaintiff and all administrative options have been exhausted to resolve JD Baca's matter, but to no avail, requiring litigation to proceed.

65.     Motion practice ensued between the parties in the above captioned matter, and on May 5, 2022, the Court entered a Memorandum Opinion and Order, ultimately allowing Plaintiff to file a First Amended Complaint, subject to modifications outlined in the Order.

66.     To date, zero survivor benefits have been distributed to JD Baca.

67.     Beyond being lawfully entitled to these benefits, JD Baca's disability makes it especially important for him to receive this additional income to help pay for his continued care and wellbeing.

68.     JD Baca has been damaged by J&J's actions and inactions and is entitled to relief.

69.     J&J's actions and inactions have materially impacted Nicole Gutierrez's ability to perform her Court imposed duties and responsibilities as the Guardian and Conservator of JD Baca, and consequently, substantial attorney fees and costs have been incurred by Plaintiff.

## CLAIMS AGAINST DEFENDANT

70.     Plaintiff incorporates by reference the preceding paragraphs in this section as if fully set forth herein.

## COUNT I:
### Claim for Benefits Pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B)

71.     "The courts of appeals," including the Tenth Circuit, "have uniformly required that participants exhaust internal review before bringing a claim for judicial review under §502(a)(1)(B)." *Heimeshoff v. Hartford Life & Acc. Ins. Co.,* 571 U.S. 99, 105 (2013); *see Held v. Manufacturers Hanover Leasing Corp.,* 912 F.2d 1197, 1206 (10th Cir. 1990) ("exhaustion of administrative (i.e., company- or plan-provided) remedies is an implicit prerequisite to seeking judicial relief" under Section 502(a)(1)(B)). An ERISA claim is only subject to judicial review

after an exhaustion of administrative (company or plan provided) remedies. *Rando v. Standard Ins. CO.*, 182 F.3d 933 (10th Cir. 1999).

72.     However, courts will generally excuse a claimant's failure to exhaust administrative remedies in "two limited circumstances," *i.e.,* "when resort to administrative remedies would be futile," and "when the remedy provided is inadequate." *Holmes v. Colorado Coal. for Homeless Long Term Disability Plan,* 762 F.3d 1195, 1204 (10th Cir. 2014); McGraw v. Prudential Ins. Co. of Am., 137 F.3d 1253, 1263 (10th Cir. 1998).

73.     The exhaustion requirement was added as another exception,

[t]he Department of Labor added another exception to the exhaustion requirement when it amended the ERISA regulations in 2000 to provide that claimants are 'deemed to have exhausted' their administrative remedies if a plan has failed to establish or follow claims procedures consistent with the requirements of ERISA.

*Holmes,* 762 F.3d at 1204 (quoting 29 C.F.R. § 2560.503–1(l )). This regulation is referred to by the Tenth Circuit as the "deemed-exhausted provision." *Id.*

74.     Here, the inadequacy exception applies. This exception "has been argued in circumstances where a plaintiff asserts that he or she received inadequate notice of the administrative remedies available, or how to pursue them." *Sawyer v. USAA Ins. Co.,* 912 F. Supp. 2d 1118, 1142 (D.N.M. 2012). On the other hand, this exception does not apply where the "plaintiff received adequate, understandable notice of [the ERISA plan's] review procedures and a full copy of the plan summary containing the review procedure provisions.*" Rando v. Standard Ins. Co.,* 182 F.3d 933, at *3 (10th Cir. 1999) (unpublished).

75.     In this case, at the time of her death, Lisa R. Baca, deceased, was a fully vested participant in Defendant's ERISA Plan. As the surviving spouse of Lisa R. Baca, JD Baca is a

third-party beneficiary of the Plan. . As Ms. Baca's surviving spouse, JD Baca is entitled to a qualified preretirement survivor annuity under the Plan.

76.     As stated above and discussed  herein, Plaintiff was directed by Defendant to seek a claim for benefits in writing and to send it by fax or postal service. Even though Plaintiff followed Defendant's instructions multiple times, Defendant denied Plaintiff her right as a court appointed guardian and as conservator, the right to request or access benefits on behalf of JD Baca.

77.      JD Baca is entitled to benefits and has a right to communicate and/or receive Information through his rightful guardian and conservator regarding the retirement benefit plan.

78.     The only documents Defendant sent to JD Baca in response to Plaintiff's requests was the federal tax withholding form and the Denial Notice. Thereafter, Defendant became completely unresponsive. Defendant therefore, failed to provide Plaintiff with any notice of the Plan's review procedures or how to pursue them before she filed this lawsuit.

79.     Further, neither of Defendant's written communications in response to Plaintiff's requests included any information at all about how to obtain internal review of Defendant's decisions. Even in its oral communications with Plaintiff and her counsel, Defendant failed to provide any information regarding the Plan's internal review procedures.

80.     What is more, Plaintiff did not receive a copy of the SPD until after this case was filed when Defendant attached the document to its First Motion to Dismiss. (See Doc. 10-1). This was the first time Plaintiff and JD Baca received a copy of the SPD.

81.     Therefore Plaintiff should be excused from exhausting her administrative remedies because the remedy provided by the Defendant was inadequate.

82.     Moreover, the deemed-exhausted exception applies in this case. This exception states that,

> in the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim.

29 C.F.R. § 2560.503-1*(l)*(1).

83.     Defendant failed to follow claims procedures consistent with 29 C.F.R. 2560.503-1. According to Subsection (b) of the regulation, Section 2560.503-1(b)(3) provides that claims procedures must not contain any provision, that are "administered in a way, that unduly inhibits or hampers the initiation or processing of claims for benefits." 29 C.F.R. § 2560.503-1(b)(3). Similarly, Section 2560.503-1(b)(4) prohibits claims procedures that "preclude an authorized representative of a claimant from acting on behalf of such claimant in pursuing a benefit claim or appeal of an adverse benefit determination," though "a plan may establish reasonable procedures for determining whether an individual has been authorized to act on behalf of a claimant." 29 C.F.R. § 2560.503-1(b)(4).

84.     Here, Defendant (1) precluded Plaintiff from pursuing a benefits claim on JD Baca's behalf even though she was his authorized representative, and (2) Defendant's procedures for determining whether she had been authorized to act on his behalf were unreasonable, in violation of 29 C.F.R. § 2560.503-1(b)(4). Namely, Defendant refused to communicate with Plaintiff regarding JD Baca's claim and forced her to seek appointment as his conservator to pursue  a claim on his behalf even though her appointment as his guardian was sufficient in establishing her authority to do so.

85.     Pursuant to the Letters of Guardianship, Nicole was granted plenary power and authority under New Mexico Law, to independently act on behalf of the protected person, Juan D. Baca, for all purposes related to Juan D. Baca's custody, care, health, safety, **and finances**. New Mexico law allows courts to grant guardians the power to "make financial decisions on behalf of the protected person," including to "compel any person under a duty … to pay sums for the welfare of the protected person to perform that duty," "receive money … deliverable to the protected person, "serve as advocate and decision maker … in any disputes … regarding the protected person's finances," and "obtain information regarding the protected person's assets and income." N.M. Stat. Ann. § 45-5-312(B)(4)(a)-(d).

86.     Accordingly, Defendant unduly inhibited Plaintiff from processing the claim on JD Baca's behalf in violation of 29 C.F.R. § 2560.503-1(b)(3). Inter alia, Defendant ignored her counsel's August 2017 and June 2021 demand letters, even though by then she had been appointed as her brother's conservator in accordance with Defendant's April 2016 Denial Notice, and even though counsel faxed the June 2021 demand letter as the J&J BSC instructed.

87.     According to to Subsection (g) of the regulation, Section 2560.503-1(g)(1) requires plan administrators to "provide a claimant with written or electronic notification of any adverse benefit determination," which is defined as "[a] denial, reduction, or termination of, or a failure to provide or make payment (in whole or in part) for, a benefit." 29 C.F.R. § 2560.503-1(g)(1), (m)(4)(i).

88.     The required notification must provide a basis for its determination and any additional information needed to perfect the claim, as well as "[a] description of the plan's review procedures and the time limits applicable to such procedures[.]" 29 C.F.R. §

2560.503-1(g)(1)(i)-(iv).This notification is required within 90 days after receiving a claim, with one additional 90-day extension permitted if the administrator gives the claimant written notice of the extension before the original 90-day period expires. 29 C.F.R. § 2560.503-1(f)(1).

89.     Between December 2015 to April 2016, Plaintiff requested payment of JD Baca's Plan benefits by contacting Defendant to determine what was needed for distribution to start, requesting accommodations due to his disability, and sending supporting documentation as to her authority to act on JD Baca's behalf.

90.     Plaintiff's counsel also requested payment of JD Baca's benefits by mailing Defendant a demand letter in August 2017, and by contacting the J&J BSC and faxing another demand letter according to its instructions in June and July 2021. However, Defendant has never paid Plaintiff or JD Baca any benefits, and neither of its written communications in response to her requests included a "description of the plan's review procedures and the time limits applicable to such procedures." 29 C.F.R. § 2560.503- 1(g)(iv).

91.     Because Defendant failed to follow claims procedures consistent with the requirements of Section 2560.503-1(b) and (g) its failures actually denied Plaintiff and JD Baca a reasonable claims procedure. 29 C.F.R. § 2560.503-1(l)(1); *Holmes,* 762 F.3d at 1213; *cf. Cruz v. Reliance Standard Life Ins. Co.,* No. CIV 18-0974 RB/SCY, 2020 WL 7248102, at *2 (D.N.M. Dec. 9, 2020) ("Where there are time limits on the plan administrator's discretion and the administrator fails to render a timely decision, the claimant shall be deemed to have exhausted the administrative remedies by operation of law[.]") (quotation marks omitted).

92.     Section 502(a) sets forth "ERISA's civil enforcement scheme" and "consists of several carefully integrated provisions." *Millsap v. McDonnell Douglas Corp.,* 368 F.3d 1246,

1250 (10th Cir. 2004). As demonstrated above, Plaintiff exhausted all administrative remedies provided to Plaintiff by Defendant and therefore she is within her right to seek judicial relief on behalf of JD Bac. Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), permits a plan participant to bring a civil action to recover benefits due under the terms of a plan, to enforce rights under the terms of a plan, and/or to clarify rights to future benefits under the terms of a plan.

93.     As a result of Defendant's related acts and omissions outlined herein, including but not limited to refusing JD Baca benefits under the Plan, and denying his Guardian and Conservator to make a claim on his behalf, Defendant has violated applicable Sections of ERISA as well as the terms under the Plan. Plaintiff is therefore entitled to relief under Section 502(a)(1)(B), including monetary relief, recovery of benefits due and to clarify rights to future benefits under the plan's terms.

**COUNT II:**
**Claim for Breach of Fiduciary Duty Pursuant to ERISA § 502(a)(3), 29 U.S.C. §**
**1132(a)(3) for Failure to Administer Plan in Accordance with Applicable Law**

94.     Conservator incorporates by reference the paragraphs above as fully set forth herein.

95.     Defendant failed to administer the Plan in accordance with ERISA's requirements, therefore Plaintiff asserts claims for equitable relief under Section 502(a)(3). Section 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a plan participant, beneficiary, or fiduciary to bring a civil action (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

96.     In referring to "other appropriate equitable relief," Section 502(a)(3) "authorizes the kinds of relief typically available in equity in the days of the divided bench, before law and equity merged." *US Airways, Inc. v. McCutchen,* 569 U.S. 88, 94–95 (2013) (quotation marks omitted). But Section 502(a)(3) does not "authorize appropriate equitable relief at large; rather, it countenances only such relief as will enforce the terms of the plan or the statute." *Id.* at 100 (quotation marks, citation, and emphasis omitted).

97.     ERISA provision Section 1055(a) requires the defined benefit plans to provide a qualified preretirement survivor annuity to all married participants who are vested and die before the annuity starting date, unless the participant has waived the benefit and the spouse consented to the waiver. 29 U.S.C. § 1055(a)(2). ERISA provision Section 1104(a), requires plan fiduciaries to discharge their duties "solely in the interest of the participants and beneficiaries," "for the exclusive purpose of … providing benefits to participants and their beneficiaries [and] defraying reasonable expenses of administering the plan," and "in accordance with the documents and instruments governing the plan[.]" 29 U.S.C. § 1104(a)(1)(A), (D).

98.     As described in the SPD, the Plan at issue does include a qualified preretirement survivor annuity for the surviving spouses of vested participants and therefore complies with Section 1055(a)(2). However, Defendant did not administer the Plan "in accordance with" this provision in violation of Section 1104(a)(1).

99.     According to *Varity Corp. v. Howe,* 516 U.S. 489 (1996), Section 502(a)(3) "act[s] as a safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy." *Id.* at 512. The Supreme Court continues to broaden the interpretation of Section 502(a)(3) in *CIGNA Corp. v. Amara,* 563 U.S. 421 (2011)

("Amara"), stating that "the remedies available to those courts of equity," including contract reformation, equitable estoppel, disgorgement of unjust enrichment, and surcharge, "were traditionally considered equitable remedies." *Id.* at 440-42.  The Court stated that "surcharge" as "monetary 'compensation' for a loss resulting from a trustee's breach of duty, or to prevent the trustee's unjust enrichment," and explains that "the fact that this relief takes the form of a money payment does not remove it from the category of traditionally equitable relief." *Id.* at 441.

100.    Here, Defendant failed to accommodate Juan D. Baca, a disabled individual, when it issued its April 8, 2016 Denial Notice to JD Baca's court appointed guardian. Defendant's Denial Notice was predicated on semantics, i.e. "*Guardian*" vs "*Conservator*," as opposed to predicated on other  legal ramifications that would ordinarily constitute a denial of access to benefits.

101.    The semantics between *Guardian* and *Conservator* are irrelevant in this context and Defendant's actions demanding proof of conservatorship over the court ordered guardianship held by Plaintiff, is inconsistent with New Mexico State Law. N.M.S.A. 1987, § 45-5-312(B)(4). Nicole Guiterez as guardian was empowered to independently act on behalf of Juan D. Baca for all purposes related to his custody, care, health, safety, and *finances*. Arbitrarily requiring that Plaintiff be appointed as JD's conservator, as opposed to accepting her authority to act on his behalf and his finances as guardian, Defendant caused JD's benefits to be unnecessarily delayed, in violation of ERISA, of the Plan, and Defendant's fiduciary duties as plan fiduciary.

102.    In order to comply with Defendant's requirements so that she could make a benefits claim for JD Baca, Plaintiff sought appointment of conservator in court. Plaintiff incurred court costs and attorney fees, and lost time value of money, and lost entitlement to

benefits during the period of delay. But even after obtaining the conservatorship and sending the paperwork to Defendant per its instructions, and hiring counsel to do the same pursuant to the August 2017 demand letter, Defendant ignored Plaintiff's requests to act on JD's behalf and to make a claim for benefits as well.

103.   By engaging in the acts and omissions described above, including but not limited to interpreting the Plan in a manner contrary to applicable federal law, refusing to make reasonable accommodations regarding JD Baca's disability that are consistent with Defendant's own policies and procedures, and for refusing to provide JD Baca a benefit mandated by ERISA, Defendant breached its fiduciary duty to JD Baca and violated Title I of ERISA.

104.   As a result of Defendant's breach of duties as plan fiduciary, and violations of Title I of ERISA, JD Baca has been harmed and is entitled to relief. Upon violation of Section 502(a)(3), plan participants and beneficiaries are entitled to seek an enumerated list of equitable relief. Section 502(a)(3) allows equitable relief only sufficient enough to enforce the particular plan and ERISA statutes. *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 94–95 (2013).

105.   Plaintiff should be entitled to specific performance requiring Defendant to respond to Plaintiff's requests for information and claim for benefits on behalf of JD Baca, as requested in Plaintiff's December 2021 letter to Defendant.

106.   As an additional means to remedy and further prevent the Defendant's failure to administer the plan with respect to applicable law, Plaintiff also requests the imposition of a constructive trust, as a means of alleviating any inconveniences that may arise between Defendant and Plaintiff regarding the benefits and/or the plan.

107.    Plaintiff further requests that plaintiff is reimbursed for the needless expenses and fees to obtain conservator appointment of JD Baca, as well as prejudgment interest, the lost time value of money, lost entitlement to benefits during the period of delay and all other relief she is entitled to including retroactive pay benefits starting from the original date of December 1, 2015.

**COUNT III:**
**Claim for Breach of Fiduciary Duty Pursuant to ERISA § 502(a)(3), 29 U.S.C. §**
**1132(a)(3), for Failure to Inform and/or for Misleading Communications**

108.    Conservator incorporates by reference the paragraphs above as fully set forth herein.

109.    Plaintiff is entitled to equitable relief under Section 502(a)(3) on the grounds that Defendant made misleading representations, and failed or refused to communicate with Plaintiff, thereby breaching its fiduciary duties.

110.    An ERISA fiduciary is obligated to disclose material information to participants and beneficiaries, and has a duty to not mislead a plan participant and/or beneficiary. 29 U.S.C. § 1104(a)(1)(A)(B).

111.    Defendant misrepresented to JD Baca that benefits were to be disbursed beginning December of 2015, yet, this never occurred. Defendant misrepresented to Plaintiff that if she obtained conservatorship she would be able to make a claim for benefits on behalf of JD Baca, but this never happened either.

112.    Defendant failed to respond timely to Plaintiff's request for payment history, the sum of past due amounts, and monthly statements, a request made in June 2021. Defendant misrepresented to Plaintiff's counsel that if the Order appointing Plaintiff as Conservator was sent to Defendant then the ticket would be expedited to the appropriate channels and a response

would be sent. However, no response was sent by Defendant and neither did it provide Plaintiff with any notice of the Plan's review procedures or how to pursue them before she filed this lawsuit.

113.    While Plaintiff and her counsel received oral instructions from Defendant's Benefit Service Center at various times, these instructions never included information regarding the Plan's internal review procedures.

114.    Plaintiff received a copy of the 2020 Summary Plan Documents ("SPD") for the first time in November 2021, after this lawsuit commenced. Defendant attached it to its first Motion to Dismiss and purported that it was the current version of the governing plan documents for JD Baca's benefits. However, JD was entitled to benefits beginning in December 2015, and the SPD submitted by Defendant through its Motion, is dated July 2020. Accordingly, the SPD does not describe the Plan terms in effect at all relevant times in this case, and therefore, Defendant's July 2020 SPD is not only deficient with respect to Plaintiff's requests for Plan information and documentation, but the submission in and of itself is misleading because it does not address the Plan for this specific case, and is a breach of Defendant's fiduciary duty to JD Baca. Upon information and belief, Defendant updates the SPD every five (5) years.

115.    Moreover "summary documents, important as they are, provide communication with beneficiaries about the plan, but … their statements do not themselves constitute the terms of the plan for purposes of § 502(a)(1)(B)," and thus these statements may not "necessarily … be enforced … as the terms of the plan itself." *CIGNA Corp. v. Amara,* 563 U.S. 421, 437-38 (2011) (emphases in original).

116.    Additionally, the SPD is misleading as it provides that a claimant can also "apply to begin … pension payments … by calling the Benefit Service Center," which Plaintiff and her counsel did. Likewise, Defendant's September 1995 letter to Mr. Baca indicated that payments "will begin as of December 1, 2015," and did not instruct him to make a claim, or indeed take any action at all, to initiate them. However, Plaintiff and her Counsel followed the aforementioned instructions, but to no avail. Therefore, Defendant's communications and produced documentation is consists of misrepresentations and failed to provide Plaintiff and JD Baca with timely and adequate notice of adverse benefit determinations as required under ERISA, and given the track record as outlined in this pleading or repeated misleading instructions by Defendant to Plaintiff, Defendant's conduct is repugnant and a breach of its fiduciary duty to JD Baca.

117.    Defendant breached its fiduciary duty to JD Baca by providing an incorrect mailing address for submitting a written claims request. Plaintiff contends that the erroneous mailing address provided to Plaintiff by Defendant was deliberate, and intended to mislead Plaintiff.

118.    Defendant failed to respond to Plaintiff's request for Plan documents and records and information affecting his claim made in December 2021, after this lawsuit commenced and after Plaintiff received a copy of the 2020 SPD for the first time attached to Defendant's first Motion to Dismiss. Plaintiff has yet to receive requested documentation, further evidencing a failure to inform and conduct business with prudence as required by fiduciary duty.

119.    As a result, Plaintiff, on behalf of JD Baca, is entitled to equitable relief, including but not limited to prejudgment interest, surcharge or monetary compensation for loss resulting

from Defendant's breach of duty, the lost time value of money Plaintiff expended on trying to

obtain JD's benefits, and lost entitlement to benefits during the period of delay. Plaintiff also

requests the imposition of a constructive trust, as a means of alleviating any inconveniences that

may arise between Defendant and Plaintiff regarding the benefits and/or the plan.

**COUNT IV:**
**Failure To Provide An Adequate Claims Procedure And Notice**
**Pursuant To ERISA § 1133(1)(2) 29 U.S.C.**

120.    Conservator incorporates by reference the paragraphs above as fully set forth

herein.

121.    Pursuant to Section 1133 an ERISA benefits plan must, "... (1) provide adequate

notice in writing to any participant or beneficiary whose claim for benefits under the plan has

been denied, setting forth the specific reasons for such denial, written in a manner calculated to

be understood by the participant, and (2) afford a reasonable opportunity to any participant

whose claim for benefits has been denied for a full and fair review by the appropriate named

fiduciary of the decision denying the claim." 29 U.S.C.A. § 1133.

122.    As stated above, Defendant failed to provide adequate notice of denial of benefits

because it failed to respond to Plaintiff's letters and correspondence requesting distribution of

benefits on behalf of JD Baca.

123.    Moreover, Defendant did not provide any opportunity for Plaintiff to request a full

and fair review of any decision made by Defendant.

124.    Plaintiff contends that if she is deemed to have failed to make a valid claim until

as late as December 2021, this is because Defendant's wrongful acts and omissions thwarted her

prior attempts to do so. As a result, JD Baca was deprived of his benefits dating back to December of 2015.

125.    Additionally, Defendant failed to address and properly accommodate Plaintiff based on the fact she was seeking to obtain benefits on behalf of JD Baca, a disabled person. Furthermore, the April 2016 Denial Notice failed to provide formal process to appeal or otherwise dispute such decision, leaving Plaintiff no opportunity to clarify that the Order Appointing Co-Guardians did, in fact, authorize the management of JD's financial affairs.

126.    The communication and lack of proper internal administrative processes created an unnecessary burden for Plaintiff to obtain benefits on behalf of JD Baca.

127.    Moreover, the P.O. Box provided by Defendant in the SPD is incorrect as discussed at length above.

128.    Therefore, as a result of Defendant's violation of  29 U.S.C.A. § 1133, JD Baca is entitled to retroactive benefits due to failure to provide a reasonable opportunity for full and fair review of the decision to deny the claim. Additionally, Defendant failed to provide an adequate process for appealing the April 2016 decision to deny Plaintiff's authority to represent JD as his guardian.

**COUNT V:**
**Claim for Statutory Penalty 502(c)(1)**

129.    Conservator incorporates by reference the paragraphs above as fully set forth herein.

130.    According to the Summary Plan Description, it states that

… there are steps you can take to enforce the above rights. For instance, if you request a copy of plan documents or the latest annual report from the plan and do not receive them within 30 days, you may file suit in a Federal court. In such a case, the court may require the plan administrator to provide the materials and pay

you up to $110 a day until you receive the materials, unless the materials were not sent because of reasons beyond the control of the administrator. … If you have a claim for benefits which is denied or ignored, in whole or in part, you may file suit in a state or Federal court.

See Exhibit J. at page 48

131.    Plaintiff contends that she should be entitled to recovery pursuant to the terms of SPD described above because the Defendant willfully failed to fulfill its duty of disclosure and has acted in bad faith.

132.    According to *Kollman v. Hewitt Associates,* the Third Circuit stated:

We do not hold that a future request for documents is per se inadequate because it fails to specifically name the documents sought. Rather, the touchstone is whether the request provides the necessary clear notice to a reasonable plan administrator of the documents which, given the context of the request, should be provided. In this case, the prior communications signaled only Kollman's interest in the calculation of his own benefits. Neither the Plan nor the SPD, when produced, provided any information along the line of Kollman's interest. It follows that Kollman's letter does not pass the clear notice test.

*Kollman v. Hewitt Associates,* LLC, 487 F.3d 139, 146 (3d Cir. 2007).

133.    *Kollman* is significantly different from the set of facts at hand. *Kollman* only inquired about a valid calculation of his benefits, whereas here as outlined above, Plaintiff, on numerous occasions, has asked for documentation related to JD Baca's survivor benefits.

134.    *Kollman* and the clear notice test it employs allows for plan beneficiaries and participants to request documents related to the plan with less specificity so long as the request is ascertainable as a request for documents related to the benefits plan. *See Kollman,* at 146. In applying the clear notice test, courts must decide based on the circumstances whether the request submitted serves as clear notice of the documents that should be provided. *Id.* Courts infer clear

notice by using circumstances due to the lack of a general rule for identifying the clear notice test.

135.    Moreover, when Courts find that through present facts that "either the request or the response indicates that [defendant] knew or should have known that [plaintiff] had requested a copy of any document relating to the plan" there is a finding of clear notice, and the penalty is then imposed. *Kollman v. Hewitt Associates,* LLC, 487 F.3d 139, 146 (3d Cir. 2007). *See Anderson v. Flexel, Inc.,* 47 F.3d 243 (7th Cir.1995).

136.    Here, Plaintiff requested account information on December 21, 2015, specifically requesting information about completing the process to begin payment of JD Baca's benefits and retirement plan. Approximately 2,348 days have passed and no documents were provided.

137.    On August 2, 2017, Plaintiff, through counsel, requested information from Defendant, specifically asking for disbursement of survivor benefits from the above-referenced retirement account, on behalf of the protected person, Juan D. Baca. This written correspondence also referenced completing any outstanding documentation. Approximately 1,758 days have passed and still no response from Defendant.

138.    On June 22, 2021, Plaintiff through Counsel requested pertinent information regarding the beneficiary account requesting payment history, the sum of past due amounts, and monthly statements. Approximately 338 days have passed and still no response from Defendant.

139.    On December 17, 2021, Plaintiff through Counsel, mailed a letter to Defendant, explicitly "all documentation related to and concerning the subject Plan, as well as any records or information that might affect this claim." 160 days have passed and Defendant still has not produced said documents.

140.    We contend that by requesting via demand letter documents or records related to JD Baca's benefits, retirement account, or Plan, that the clear and present test is met, and that the knew or should have known which documents were being requested and therefore defendant violated 502(c)(1), entitling plaintiff to relief.

141.    According to the Summary Plan Description and Section 502(c)(1) of ERISA, Defendant's failure to respond with supplied documents 30 days after receiving written request for documents, allows a fine up to $110 per day at the discretion of the court. It also noted that the purpose of the up to $110 per day penalty is not to compensate a plaintiff but, rather, to punish noncompliance with ERISA.

142.    Therefore, under the  Defendant's very own SDP and Section 502(c)(1), Defendant is subject to the statutory penalty of up to $110/day to Plaintiff, per the court's discretion, until receipt of said documents are produced.

**COUNT VI:**
**DECLARATORY JUDGMENT**

143.    Conservator incorporates by reference the paragraphs above as fully set forth herein.

144.    Pursuant to 28 § 2201 U.S.C.A. the court "...may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought…" and any such decree will have the force and effect as a final judgment.

145.    JD Baca is the surviving spouse and designated beneficiary under the subject retirement benefits plan and therefore, is entitled to the monthly premium pursuant to the terms of the subject retirement plan.

146.    As stated above, Plaintiff is entitled to obtain benefits on behalf of JD Baca as his court appointed guardian and conservator.

147.    Because of Defendant's wrongful acts and omissions as demonstrated above, JD Baca, through his guardian, was hindered from receiving his benefits beginning in December 2015, when he was originally entitled to them. If Defendant is not required to pay retroactive payments to Plaintiff, Defendant would be unjustly enriched.

148.    Therefore, the court should declare that JD Baca is entitled to retroactive benefits starting from December 1, 2015, declare that he is entitled to his monthly benefits, and that Plaintiff is entitled to obtain benefits on JD Baca's behalf as his authorized representative.

**COUNT VII:**
**Injunctive Relief**

149.    Conservator incorporates by reference the paragraphs above as fully set forth herein.

150.    To obtain a preliminary injunction, a plaintiff must show that "(1) the plaintiff will suffer irreparable injury unless the injunction is granted; (2) the threatened injury outweighs any damage the injunction might cause the defendant; (3) issuance of the injunction will not be adverse to the public's interest; and (4) there is a substantial likelihood the plaintiff will prevail on the merits." *Nat'l Tr. for Historic Pres. v. City of Albuquerque,* 1994-NMCA-057, ¶ 21, 117 N.M. 590, 595, 874 P.2d 798, 803.

151.    JD Baca is entitled to benefits and has a right to communicate and/or receive information regarding the subject retirement benefit plan. Plaintiff, as JD Baca's guardian and conservator, is entitled to obtain benefits and information regarding the subject retirement benefit plan.

31

152.    Defendant's continued denial of benefits and lack of communication has caused and will continue to cause irreparable harm to JD Baca.

153.    The threat of continued injury outweighs any possible injury to Defendant. Injunctive relief would not be against public interest, and based on the facts discussed herein, Plaintiff is entitled to relief and will likely succeed on the merits of this action.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays that the Court grant the following relief:

A.  Order Defendants to pay the monthly qualified preretirement survivor annuity to Plaintiff on behalf of JD Baca;

B.  Order Defendants to pay retroactive payments to Plaintiff on behalf of JD Baca from December 1, 2015;

C.  Require Defendant to reform the Plan with respect to JD Baca such that Nicole Gutierrez, is deemed eligible to receive a monthly preretirement survivor annuity beginning immediately, as the Guardian and Conservator of JD Baca.

D.  Order that Defendant pay to to Plaintiff on behalf of JD Baca amounts to make Plaintiff whole for the harm suffered due to Defendant's breaches by providing other appropriate, equitable relief, including but not limited to prejudgment interest, surcharges, restitution, lost value money, lost time of benefits, specific performance and imposing a constructive trust and/or equitable lien on any funds wrongfully held by Defendant;

E.  Order Defendant to pay Plaintiff on behalf of JD Baca the civil penalty of up to $110.00 pursuant to the court's discretion;

F.  Declare that Plaintiff on behalf of JD Baca has a right to receive a monthly preretirement survivor annuity under ERISA;

G.  Declare that Plaintiff on behalf of JD Baca has a right to receive retroactive payments from December 1, 2015;

H.  Enter an order for injunctive relief in favor of Plaintiff, requiring Defendant to pay monthly survivor benefits and retroactive payments;

I.  Award Plaintiff reasonable attorneys' fees and costs of suit pursuant to ERISA §502(g), 29 U.S.C. § 1132(g); and

J.  Provide such other relief as the Court deems equitable and just.

## JURY DEMAND

Plaintiff demands a trial by jury of all issues so triable.

SUBMITTED BY:

**DENIRO LAW, LLC**

By: */s/ Vanessa L. DeNiro*
Vanessa L. DeNiro, Esq.
*Attorney for Guardian and*
*Conservator for Juan D. Baca*
P.O. Box 45104
Rio Rancho, NM 87175
(505) 977-8975
vanessa@denirolaw.com

## CERTIFICATE OF SERVICE

I hereby certify that, on this 26th day of May, 2022, I filed the foregoing using CM/ECF, which caused service by electronic means on all counsel of record as follows:

Pamela S. C. Reynolds, Pro Hac Vice
preynolds@litter.com
LITTLER MENDELSON, P.C.
375 Woodcliff Drive,
Suite 2D Fairport,
NY 14450
585.203.3400 (Telephone)
585.203.3414 (Facsimile)

R. Shawn Oller (N.M. Bar No. 8787)
soller@littler.com
 LITTLER MENDELSON, P.C.
2425 East Camelback Road,
Suite 900
Phoenix, AZ 85016
602.474.3600 (Telephone)

602.957.1801 (Facsimile)

Attorneys for Defendant Johnson & Johnson International, Inc.

*/s/Vanessa L. DeNiro*
Vanessa L. DeNiro, Esq.